UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 06-CIV-61033-COOKE/BROWN

SPARTAN MASONRY, LLC,

    Plaintiff,

v.

HOAR CONSTRUCTION, LLC,

    Defendant.
_____/

### ORDER DENYING MOTION TO VACATE ARBITRATION AWARD

**THIS CAUSE** is before the Court upon Plaintiff's Motion to Vacate Arbitration Award (DE 1), filed July 11, 2006. The Court having reviewed the Motion finds, for the reasons set forth below, that Plaintiff's Motion to Vacate Arbitration Award should be denied.

**I.   BACKGROUND**

Plaintiff Spartan Masonry, LLC ("Plaintiff" or "Spartan") filed this suit on July 11, 2006. Spartan brought this action to vacate an arbitration award entered in favor of Defendant Hoar Construction, LLC ("Defendant" or "Hoar"). Spartan's Complaint does not set forth a recitation of the facts underlying this arbitrated matter, therefore, the Court will rely upon the recitation of facts provided by the Arbitration Panel.

This action stems from a subcontract dispute involving a construction project (the "Project") located in Coral Gables, Florida. Hoar was the general contractor on the Project. Hines Development was the owner and Spartan was the masonry subcontractor for the Project. Hoar and Spartan entered into a subcontract dated June 5, 2003. Under the subcontract, Spartan

-1-

was required to furnish all labor, materials, and equipment necessary to complete all masonry and cast stone for the Project in accordance with certain plans, specifications, and outlined schedules. Through arbitration both Parties sought damages for breach of contract.[1] In the arbitration, Hoar contended that it spent over $5,000,000 to complete a subcontract with a value of $1,400,000. Spartan, meanwhile, argued that Hoar breached the subcontract by nonpayment. Additionally, Spartan argued that it had incurred additional costs related to the lack of suitable concrete work for the masonry. Spartan, therefore, made a counterclaim for contract balances in the amount of $1,100,000. Both Parties asserted claims for defective work, costs of correction of defective work, delay to the termination of the Project, attorneys' fees and costs, costs of arbitration, and for interest on unpaid sums.

The major point of contention in this arbitration was which Party breached the subcontract. Specifically, the Arbitration Panel ("Arbitration Panel" or "Panel") had to resolve whether: (1) Spartan breached the subcontract, on April 22, 2004, through lack of prosecution of the work; or (2) Hoar breached the subcontract, on May 10, 2004, for lack of payment. The Arbitration Panel issued its decision on April 12, 2006. In its decision, the Panel found that Spartan was the first Party to materially breach the subcontract, through lack of prosecution of the work, on April 22, 2004. Consequently, the Arbitration Panel directed Spartan to pay to Hoar the sum of $1,968,291.00 on or before April 30, 2006. This sum was the net of all set offs and included interest at the legal rate. Presently before this Court is Spartan's Motion to Vacate the

---

[1] Pursuant to § 29 of the subcontract the Parties agreed that "[a]ny and all claims, disputes, and controversies arising out of or related to this Subcontract or this Project shall, to the fullest extent permitted by federal law, be resolved by binding arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules." Subcontract at § 29.

Arbitration Award.

## II.   ANALYSIS

The arbitration provision within the subcontract states "the enforceability and scope of this provision shall be governed by the Federal Arbitration Act." Subcontract at § 29. Judicial review of commercial arbitration awards is narrowly limited under the Federal Arbitration Act ("FAA"). See 9 U.S.C. § 10-11. The FAA presumes the confirmation of arbitration awards. Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1190 (11th Cir.1995). Further, federal courts should defer to an arbitrator's resolution of the dispute whenever possible. Lifecare Int'l, Inc. v. CD Med., Inc., 68 F.3d 429, 433 (11th Cir.1995) (citations omitted). The FAA, however, sets out the following four bases for vacating an award: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party may have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a). In addition to those four statutory grounds, the Eleventh Circuit has set forth three non-statutory grounds for vacatur. The non-statutory grounds for vacatur include: (a) the award is arbitrary and capricious; (b) enforcement of the award is contrary to public policy; or (c) the award was made in manifest disregard for the law. B.L. Harbert Inter., LLC v. Hercules Steel Co., 441 F.3d 905, 910 (11th Cir. 2006) (citations omitted).

In Brown v. Rauscher Pierce Refsnes, Inc., 994 F.2d 775 (11th Cir. 1993), the Eleventh

Circuit established the following procedural framework for evaluating a motion to vacate:

> When considering a motion to vacate on one of these non-statutory grounds, the reviewing court begins by looking to the award itself.  When no rationale is given for a lump-sum award, the reviewing court first reviews the arbitration award to determine if there is a rational basis for the award.  The onus is on the party requesting the vacatur to refute ... every rational basis upon which the arbitrator could have relied.  So long as there is a proper basis for the award, the party seeking vacatur is limited to the four narrow bases set forth in the FAA, and may not invoke the non-statutory bases as grounds for vacating the award.  In contrast, when considering an award, such as this one, which is not silent as to its rationale, the reviewing court should not engage in this procedure.  Rather, the party seeking vacatur may raise any of the statutory or non-statutory grounds in support of its motion to vacate the award.

Id. at 779 (citations omitted).  Thus, before a Party may assert a non-statutory ground for vacatur the Court must first establish that the arbitrator's decision is not silent as to its rationale.  This Court has reviewed the arbitration award at issue in the present action and finds that the award is not silent as to its rationale.  In fact, the Panel issued a sixteen page memorandum in which it explicitly outlined its rationale for the award.  Therefore, Spartan may raise any statutory or non-statutory ground to support its Motion to Vacate.  See id.

Spartan challenges the arbitration award on the grounds that it is arbitrary and capricious. The Eleventh Circuit has established that an arbitration award is "arbitrary and capricious only if 'a ground for the arbitrator's decision can[not] be inferred from the facts of the case.'"  Raiford v. Merril Lynch, Pierce, Fenner, & Smith, 903 F.2d 1410, 1413 (11th Cir. 1990) (citing Siegel v. Titan Indus. Corp., 779 F.2d 891, 894 (2d. Cir. 1985).  See Ainsworth v. Skurnick, 960 F.2d 939, 941 (11th Cir. 1992) cert. denied 507 U.S. 1045.  Thus, for an award to be vacated as arbitrary and capricious, the panel's award must contain more than an error of law or interpretation; rather, there must be no ground for the panel's decision.  Brown, 994 F.2d at 781.

Upon reviewing the Arbitration Panel's decision, the Court finds that the decision is not arbitrary or capricious. Spartan's Motion is based upon its incorrect assertion that the Panel's decision is grounded in a finding that Spartan breached the subcontract first. According to Spartan, while Hoar brought in another masonry subcontractor, E&F Builders, to supplement its work the Panel disallowed any damages to Hoar based upon E&F's supplementation of Spartan's work until the end of May 2004. Thus, Spartan argues that any alleged payments from Hoar to E&F could not serve as grounds for a finding that Spartan breached the subcontract in April of 2004. Furthermore, Spartan contends that the Panel made a critical error when it concluded that Hoar was entitled to damages for the supplementation work provided by Selective Masonry because the evidence did not reflect that Hoar made any payments to Selective Masonry prior to May 23, 2004 — thirteen days after Hoar's payment to Spartan was due. Consequently, Spartan asserts that the evidence does not support the Panel's conclusion that Spartan breached the subcontract on April 22, 2004.

At the outset, the Court must note that it appears that Spartan, as the losing Party in arbitration, is attempting to re-litigate the merits of issues already resolved by the Panel. This attempt to gain a "second bite at the apple" is frowned upon and sanctionable in the federal courts. See B.L. Harbert Intern., LLC, 441 F.3d at 907, 914 (stating "[t]he laudatory goals of the FAA will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest. If we permit parties who lose in arbitration to freely re-litigate their cases in court, arbitration will do nothing to reduce congestion in the judicial system; dispute resolution will be slower instead of faster; and reaching a final decision will cost more instead of less . . .this Court is exasperated by those who attempt

to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards. The warning this opinion provides is that in order to further the purposes of the FAA and to protect arbitration as a remedy we are ready, willing, and able to consider imposing sanctions in appropriate cases."). In fact, the Panel held a ten day hearing on this matter through which it considered the testimony of a host of witnesses and reviewed numerous exhibits and other Project documentation. Moreover, there is an adequate basis for the Panel's decision. Consequently, Spartan's Counsel is cautioned to refrain from filing such frivolous challenges in the future. See id.

### A. THE ARBITRATION AWARD

#### 1. E&F BUILDERS

Spartan is correct in its contention that the Panel disallowed damages for E&F Builders supplemental work. In relevant part, the Panel stated " [t]he Panel divided the work of E&F Builders into two parts: the first part up to the end of May 2004 when the Panel considered that the main masonry work in the office structure was over 80% complete and from June 1, 2004 when the work done be [sic] E&F could be considered predominantly corrective and completion work. Based on the testimony and documentation the Panel concluded that the work done up through the end of May was not chargeable to Spartan." Award at 9. However, the Panel's conclusions regarding E&F Builders is not dispositive of whether Spartan breached the subcontract.

#### 2. HOAR DID NOT BREACH THE SUBCONTRACT

As previously discussed, Spartan contends that the Panel's decision was incorrect because Hoar breached the subcontract first. Spartan's assertion, however, is incorrect. In the Award, the

Panel unequivocally stated that it rejected "Spartan's claims in their entirety." Award at 13. Thus, the Panel did not find that Hoar breached the subcontract. Consequently, Spartan's contention that the Panel erred when it concluded that it breached the subcontract *first* is based upon a faulty premise because the Panel did not make a finding that Hoar ever breached the subcontract. Further, there is ample evidence to support the Panel's determination that Hoar did not breach the subcontract. In relevant part, the subcontract states

> Time is the essence of this contract. The Subcontractor is to execute this contract with sufficient speed and diligence to enable the Contractor and other subcontractors to comply with their schedules (see Attachment C). The Contractor may order the Subcontractor, at the Subcontractor's expense, to increase manpower and/or work such overtime as may be necessary to catch up or keep abreast with the general progress of the project schedule. If the Subcontractor fails to comply with this order, the Contractor may furnish the labor and materials and work such necessary overtime for the account of the Subcontractor without terminating the Subcontract. The entire cost and expense incurred by the use of said overtime shall be borne by the Subcontractor. Subcontractor will be responsible for all additional cost including lost revenues caused by late completion of its Work . . . If (a) the Subcontractor fails to perform under this Subcontract or to do or perform any and all acts or things herein required or agreed to be done or performed . . . or (k) the Subcontractor fails to carry forward and complete the work as provided herein as rapidly as the Contractor may judge that the progress of the structure or structures will permit . . . then without prejudice to any other right or remedy under applicable law or this Subcontract, and after giving the Subcontractor forty-eight (48) hours notice of the Contractor's intent to do so, may: (1) terminate this Subcontract and the employment of the Subcontractor and remove the Subcontractor from the Project; and may (2) take control of the work in whole or in part and immediately take position of and use to complete Work as the Contractor may think best all property delivered to the Project site for purpose of completing the Work . . . The Subcontractor shall not be entitled to receive any further payments until the Work is completed and accepted. Without limitation of the foregoing, any rent, compensation, reimbursement or other payment claimed by the Subcontractor for the Contractor's possession and use of property to complete the Work under this section shall be due, if at all, only when the Work is completed and accepted and the amount of the Contractor's offset is liquidated.

Subcontract at §§ 6, 12. Thus, the Subcontract explicitly provides that Hoar may take over

Spartan's work, after giving forty eight hours notice, should Hoar determine that Spartan's work was not being performed in accordance with the subcontract or the outlined schedule.

The Panel found that there was ample evidence to indicate that Spartan's work was not performed in accordance with the subcontract and outlined schedule. Based upon the testimony of Spartan's own expert, the Panel concluded that there was a thirty nine day delay in completion of the Project which was attributable to Spartan. Award at 7. The Panel also found — based partially upon the testimony of Spartan's own expert — that Spartan had performed defective work. Id. at 3. Further, as previously discussed the subcontract explicitly allowed Hoar to withhold payment to Spartan should Spartan fail to perform in accordance with the subcontract. See Subcontract at §§ 6,12. Hoar relied upon these provisions in the subcontract when it sent Spartan a notice of default. After sending the notice of default Hoar was well within its contractual rights to withhold payment to Spartan. See id. Consequently, the Panel's rejection of Spartan's claim that Hoar breached the subcontract by withholding payment in May of 2004 is grounded within and logically flows from the evidence and the subcontract.

### 3. PAYMENT TO SELECTIVE MASONRY IS NOT DISPOSITIVE

Spartan also argues that the Panel made a critical error when it concluded that Hoar was entitled to damages for the supplementation work provided by Selective Masonry because the evidence did not reflect that Hoar made any payments to Selective Masonry prior to May 23, 2004. Based upon this argument Spartan contends that it did not and could not have breached the subcontract in April of 2004, therefore, Hoar must have committed the first breach in May of 2004 when it failed to submit payment to Spartan. However, this argument convolutes the

Arbitration Panel's decision.[2]

Contrary to Spartan's assertion the issue of whether Hoar made payment to Selective Masonry in April of 2004 is not dispositive of whether Spartan breached the subcontract on April 22, 2004.  In its decision, the Panel stated:

> Although Spartan gave its notice of breach for lack of payment, Hoar had previously informed Spartan that no payment would be made for April and May because it had expended greater sums of money in support of Spartan's effort to keep up with the progress of the job and to remediate defective masonry work.  There was uncontroverted testimony that Spartan had paid the Selective personnel until sometime in April of 2004 when 'the check bounced' and Hoar was forced to make payments directly to Selective.  There was no testimony that would indicate that the work done by Selective was without the total agreement of Spartan.  The Panel concluded that it was Spartan who had breached the contract as a result of non-prosecution of the work.

Award at 8.  This statement, however, does not limit Spartan's breach to the non payment of the supplemental work provided by Selective Masonry.  In fact, the above quote expressly states that the breach occurred due to Spartan's "non prosecution of the work."  Id.  Furthermore, in its award the Panel compensated Hoar for damages dating from December 4, 2003 to June 15, 2004.  Specifically, the Panel stated "[t]here was testimony by [Steven McCord] and others about the necessity of Mr. McCord's presence on the job site as a result of the masonry problem.  The Panel was persuaded that Mr. McCord's costs were thus assignable to Spartan."  Award at 12.  Thus, it is apparent that the Panel determined that Hoar suffered damages well before the April 2004 date in which Hoar allegedly made payments to Selective Masonry on Spartan's behalf.  Furthermore, as previously discussed there was ample evidence to indicate that Spartan's work was defective and not performed in accordance with the schedule outlined in the subcontract.

---

[2] See supra pp. 6-8.

See supra pp. 7-8. Therefore, there is no basis to find that the Panel acted arbitrarily or capriciously when it concluded that Spartan breached the subcontract.

### III. CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Vacate Arbitration Award is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28TH day of March, 2007.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

*Copies furnished to:*

*All Counsel of Record*